ATLAS NAT. BANK v. ABRAM FRENCH SONS CO.

(Circuit Court, D. Massachusetts. February 2, 1905.)

No. 1,636.

1. REFERENCE—HEARING—REVIEW OF EVIDENCE.

Where, on exceptions to a master's report, the evidence, other than certain exhibits, was not before the court, the finding of fact by the master would be taken as true.

2. FRAUDULENT CONVEYANCE—EVIDENCE.

On an intervening petition by a receiver of an insolvent Massachusetts corporation against the receiver of a Maine corporation to set aside an alleged fraudulent conveyance by the Massachusetts company to the Maine company, where it appeared that the Massachusetts company conveyed to the Maine company merchandise to the amount of about $136,000, and realized in cash from the Maine company, and in cancellation of the liabilities of the Massachusetts company, $186,000, there was no evidence of any fraudulent intent towards creditors of the Massachusetts company, and where all the questionable acts of the person in control of the Massachusetts company, and from which a fraudulent intent could be inferred, were directed towards satisfying the claims of the Massachusetts company, to the injury sometimes of the Maine company, it was insufficient to show the intent to hinder, delay, and defraud the creditors of the Massachusetts company.

In Equity.

J. B. & H. E. Warner, for John Reed.

Gaston, Snow & Saltonstall, for B. W. Boyden.

COLT, Circuit Judge. This is an intervening petition, filed by the receiver of the Abram French Company, a Massachusetts corporation, against the receiver of the defendant, the Abram French Sons Company, a Maine corporation, to set aside an alleged fraudulent conveyance by the Massachusetts company to the Maine company. The petition and answer were referred to a master. The hearing before the master extended over a period of more than a year. A mass of evidence was introduced, mostly by the petitioner. After fully hearing the parties and examining the evidence, the master has filed an exhaustive report, in which the conclusion is reached that the transfer was not made with intent to hinder, delay, or defraud the creditors of the Massachusetts company. The present hearing was had on the petitioner's exceptions to the master's report. Since the evidence (except the exhibits) is not before the court, the findings of fact by the master must be taken as true. The only question, therefore, which is raised by the exceptions, is whether the master's conclusion upon the facts found is clearly unwarranted in law.

After reviewing the history and condition of the Massachusetts company, and all the material facts established by the evidence prior to or contemporaneous with the conveyance in question, the master concludes that they do not "warrant a finding that the transfer was fraudulent," nor do they appear to him "to establish the fact that the transfer actually accomplished by the steps thus taken was such as to be inconsistent with an honest intent." Proceeding, then, to consider the acts of the two companies after the transfer in connection with those prior

thereto, the master, upon all the evidence, including that admitted de bene, finds himself unable "to reach the conclusion that the transfer is proved to have been inconsistent with an honest intent toward the creditors of the Massachusetts company, present or future, in so far as the companies respectively are chargeable with any intent in the transaction or with any knowledge of such intent." The master finds that the following property was embraced in the bill of sale:

" 'The retail and hotel supply business of the seller and the good will thereof. The use of the name "Abram French Company" to the exclusion of any further use thereof by the seller except for the purpose of liquidation. Its merchandise as shown by an inventory made by the parties as of October 1, 1901, less such thereof as has been sold for and on account of the buyer since that date. Its leases, trade-marks, and the benefit of all unfilled orders and all contracts for the produce, manufacture, sale, or transportation of merchandise, with power to enforce the same in the name of the seller or otherwise, but at the buyer's expense.' With the provision, however, that the buyer should assume 'the future burden of such contracts and hold the seller harmless from any liability hereafter arising thereunder.' But should not assume 'any liability of the seller, whether arising under said contracts or in any other manner whatever, which existed prior to October 1, 1901.' "

The only portion of the above property to which the evidence enabled the master to assign a definite value was the item of merchandise. Nothing of any value representing any of the other items came into the possession of the Maine company. As to the merchandise, the master finds that its actual value at the date of the transfer was $136,740.04. The master finds that the consideration received by the Massachusetts company for the property sold at the date of the sale, January 23, 1902, was as follows:

"(1) $65,000 in cash, already received by it from subscriptions on behalf of the Maine company. (2) The Maine company's rights against E. C. Huxley and E. C. Converse for $35,000, due from them as subscribers. (3) The Maine company's rights against William A. French for $70,000, remaining due from him as subscriber, the stock so subscribed for being delivered to him to that amount. (4) Its own notes for $30,000 in payment of the remainder of William A. French's subscription, with the right to exchange the same for 300 shares of preferred stock delivered to him and S. Waldo French. (5) 350 shares preferred stock subscribed for, but not yet taken, by Huxley and Converse, and 3,997 shares of common stock, less what was issued to subscribers as above, 175 of which would also have to be delivered upon payment of said subscriptions."

The total actual results accruing to the Massachusetts company from what was received on January 23, 1902, for its merchandise the master finds to have been cash $67,000, liabilities of the Massachusetts company canceled $119,000; making a total of $186,000. In other words, for merchandise whose actual value was $136,740.04 the Massachusetts company realized in the manner described $186,000. As the result of these figures, the master declares that he is "unable to find that any fraudulent intent toward creditors of the seller is to be inferred from the consideration for the sale above described, taken by itself." As bearing on the question of fraudulent intent, there is one point in the master's report which should, perhaps, be referred to. The master finds that during the first six months after the transfer in question, by the express direction of William A. French, certain letters were sent to different parts of the country requesting loans of money to

the Massachusetts company; that in some cases loans were made, and the money used by that company; and that the statements and representations respecting the Massachusetts company contained in those letters were false and fraudulent. As to these transactions the master reached the following conclusions:

"The inferences to be drawn from them relate only to the actual personal intent of French, so far as that is an element affecting the transfer at the time it was made. The utmost that can be inferred is that he then intended, if the transfer should be accomplished in the manner above described, to use it in furtherance of attempts to induce people to become creditors of the Massachusetts company by means of untrue representations as to facts resulting from it. If, as I have found, the transfer was not in violation of the rights of creditors of the Massachusetts company who were creditors at the time, neither was it in violation of the rights of any future creditors who could have been expected to become such by any reasonably possible anticipation on the part of members of either board of directors other than French. It has not seemed to me that knowledge of an undisclosed intent on his part of the character above described can be properly imputed to the Maine company in its acts resulting in the transfer, notwithstanding the extent to which those acts were controlled by French. I have therefore regarded the letters referred to as immaterial upon the questions before me."

I see no reason to doubt the soundness of these conclusions. The master finds that William A. French was the controlling mind throughout all the transactions between the two companies. Taking this fact into consideration in connection with the insolvency of the Massachusetts company, it seems to me that William A. French was especially anxious to satisfy the creditors of the Massachusetts company in order to avoid ever-impending trouble from that source. Several acts of William A. French confirmatory of this view are found in the master's report: The issuing to William A. French of 200 shares and to S. Waldo French of 100 shares of the preferred stock of the Maine company for the purpose of purchasing the notes of the Massachusetts company to the amount of $30,000; the sums amounting to over $30,000 wrongfully drawn from the Maine company, under the direction of William A. French, and used to pay the debts of the Massachusetts company; the settlement of claims against the Massachusetts company to the amount of $56,800 by preferred stock of the Maine company subscribed for by William A. French, trustee; the soliciting of loans to the Massachusetts company after the transfer by letters sent under the direction of William A. French, the money so obtained being used to pay the debts of the Massachusetts company. All the questionable acts of William A. French which are found in the master's report, and from which a fraudulent intent might be inferred, seem to have been directed to satisfying the pressing claims against the Massachusetts company, to the injury, sometimes, of the Maine company. Clearly, these acts do not show any intent to hinder, delay, or defraud the creditors of the Massachusetts company.

The petitioner contends that the facts found by the master disclose an attempt to defraud the creditors of the Massachusetts company, and that relief may be granted upon any one of the following grounds: (1) That the conveyance was fraudulent; (2) that the assets of the Massachusetts company in the hands of the Maine company are charged with a trust or equitable lien in favor of the creditors of the Massa-

·chusetts company; (3) that the Maine and the Massachusetts companies are in fact the same, and the debts of one are the debts of the ·other. These several grounds of relief all rest upon the fundamental proposition that the conveyance in question was fraudulent in fact and in law, and upon that issue the master failed to sustain the petition-·er's contention.

The cases cited in the petitioner's brief are not applicable to the case at bar. Upon the facts found by the master, this is not a case in which the Maine and the Massachusetts companies are in fact the same. It is not a case in which one corporation simply transfers all its property to another corporation, and distributes the stock of the new corporation among the stockholders of the old corporation in proportion to their respective holdings. Nor is this a case, upon the facts stated by the master, in which property was conveyed for the purpose of securing it from attachment, or for the purpose of putting obstacles in the way ·of the enforcement by creditors of their claims; nor can it fairly be said that what was done operated to produce these results.

Upon full consideration, I find no error in the conclusions reached by the master. The exceptions are overruled, and an order may be en-·tered confirming the report.

Exceptions overruled; master's report confirmed.